## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MIKE GROENE, individually and as Chair of the Stop Overspending Nebraska Ballot Committee; ROBERT COLE ROGERS, and AMIE SPRADLEY, | Case No.: _____ |
| Plaintiffs, | |
| v. | |
| COLEEN SENG, in her official capacity as Mayor of the City of Lincoln, Nebraska; THOMAS K. CASADY, in his official capacity as Chief of Police for the City of Lincoln, Nebraska; MIKE FAHEY, in his official capacity as Mayor of the City of Omaha, Nebraska; THOMAS H. WARREN, in his official capacity as Chief of Police for the City of Omaha, Nebraska; JULIE M. HANEY, in her official capacity as Treasurer, Douglas County, Nebraska; RIVKAH SASS, in her official capacity as Library Director for the City of Omaha, Nebraska; STACEY ALDRICH, in her official capacity as Assistant Library Director for the City of Omaha, Nebraska; JAY VAVRICEK, in his official capacity as Mayor of the City of Grand Island, Nebraska; STEVE LAMKEN, in his official capacity as Chief of Police for the City of Grand Island, Nebraska; and STEVE FOSSELMAN, as Library Director for the City of Grand Island, Nebraska, | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| Defendants. | |

## PRELIMINARY STATEMENT

1.     This is a civil rights action challenging the policies and practices of the City of Omaha,

Nebraska, the City of Lincoln, Nebraska, and the City of Grand Island, Nebraska

regarding the prohibition and restriction of First Amendment activity on and around

public parks, sidewalks, and streets, and outside of other public buildings and facilities

including County Treasurer Locations, outside of courthouse/civic centers, and outside of public libraries.

2.     Each of these cities has put into place policies and practices which prohibit protected expressive speech and conduct in a manner which violates the Plaintiffs and others First Amendment rights.

3.     Further, each of these cities has put into place policies and practices which delegate unfettered discretion to governmental officials to prohibit First Amendment activity, and this unfettered discretion has not been applied in an even-handed manner.

4.     Plaintiffs are petition circulators, some of whom have been denied access to public areas and have been threatened with arrest due to their engagement in protected First Amendment activities in these cities.

## JURISDICTION AND VENUE

5.     This action arises under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights, privileges and immunities secured by the Constitution of the United States. The rights sought to be redressed are guaranteed by the First and Fourteenth Amendments to the United States Constitution.  This Court has federal question jurisdiction over this controversy under 28 U.S.C. §§ 1331 and 1343.  This Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6.     Venue is proper in the District of Nebraska under 28 U.S.C.§ 1391.

## PARTIES

7.      Plaintiff Mike Groene is Chairman of the Stop Overspending Nebraska Ballot

Committee, a group which seeks to place a constitutional amendment on the Nebraska

November 2006 ballot.  The constitutional amendment would establish a limit on the

growth of state spending which may only be exceeded with voter approval (the "SOS

Initiative", attached hereto as Exhibit 1.)  Groene co-sponsors the SOS Initiative petition

and also circulates the SOS Initiative petition on a volunteer basis.

8.      Plaintiff Robert Cole Rogers is a resident of the State of Texas.  He has been circulating

the SOS Initiative petition throughout Nebraska since June 5, 2006.  Rogers has been

prohibited from circulating the SOS Initiative petition at Douglas County Treasurer's

Office and Department of Motor Vehicle locations in Omaha, outside of Omaha public

libraries, and outside of Grand Island public libraries.

9.      Plaintiff Amie Spradley is a resident of the State of Texas.  She has been circulating the

SOS Initiative petition in the Omaha and Lincoln areas since June 5, 2006.  Spradley has

been prohibited from circulating the SOS Initiative petition in public areas in Lincoln,

Nebraska.

10.     Defendant Coleen Seng is the Mayor of the City of Lincoln ("Lincoln").  Seng is a person

within the meaning of 42 U.S.C. § 1983 and was acting under color of state law with

respect to all acts or omissions attributed to Seng.  As Mayor, Seng is the Chief

Executive of Lincoln and is charged with the administration and enforcement of Lincoln

policies and practices regarding petition circulators.

11.    Defendant Thomas K. Casady is the Chief of Police of Lincoln.  Casady is a person
within the meaning of 42 U.S.C. § 1983 and was acting under color of state law with
respect to all acts or omissions attributed to Casady.  As Chief of Police, Casady is
responsible for the enforcement of Lincoln's policies and practices regarding petition
circulators.  (Together, Seng and Casady are hereinafter referred to as the "Lincoln
Defendants.")

12.    Defendant Mike Fahey is the Mayor of the City of Omaha ("Omaha").  Fahey  is a person
within the meaning of 42 U.S.C. § 1983 and was acting under color of state law with
respect to all acts or omissions attributed to Fahey.  As Mayor, Fahey is the Chief
Executive of Omaha and is charged with the administration and enforcement of Omaha's
policies and practices regarding petition circulators.

13.    Defendant Thomas H. Warren is the Chief of Police of Omaha.  Warren  is a person
within the meaning of 42 U.S.C. § 1983 and was acting under color of state law with
respect to all acts or omissions attributed to Warren.  As Chief of Police, Warren is
responsible for the enforcement of Omaha's policies and practices regarding petition
circulators.

14.    Defendant Julie M. Haney is Treasurer of Douglas County, Nebraska.  Haney is a person
within the meaning of 42 U.S.C. § 1983 and was acting under color of state law with
respect to all acts or omissions attributed to Haney.  Haney is responsible for the
administration of the policies and practices regarding petition circulators and public
access to all Douglas County Treasurer offices.

4

15.   Defendant Rivkah Sass is the Library Director for all Omaha public libraries.  Sass is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law with respect to all acts or omissions attributed to Sass.  As Library Director, Sass is responsible for the administration of the policies and procedures at Omaha public library locations.

16.   Defendant Stacey Aldrich is the Assistant Library Director for Omaha.  Aldrich is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law with respect to all acts or omissions attributed to Aldrich.  As Assistant Library Director, Aldrich is responsible for the administration of the policies and procedures at Omaha public library locations, including the W. Dale Clark Main Library.  (Together, Fahey, Warren, Sass, and Aldrich are hereinafter referred to as the "Omaha Defendants.")

17.   Defendant Jay Vavricek is the Mayor of the City of Grand Island, Nebraska ("Grand Island").  Vavricek is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law with respect to all acts or omissions attributed to Vavricek.  As Mayor, Vavricek is Chief Executive of Grand Island and is charged with the administration and enforcement of Grand Island's policies and practices regarding petition circulators.

18.   Defendant Steve Lamken is the Chief of Police of Grand Island.  Lamken is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law with respect to all acts or omissions attributed to Lamken.  As Chief of Police, Lamken is responsible for the enforcement of Grand Island's policies and practices regarding petition circulators.

19.     Defendant Steve Fosselman is the Library Director for Grand Island public libraries. Fosselman is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law with respect to all acts or omissions attributed to Fosselman.  As Library Director, Fosselman is responsible for the administration of the policies and procedures at Grand Island public library locations.  (Together, Vavricek, Lamken, and Fosselman are hereinafter referred to as the "Grand Island Defendants.")

20.     At all relevant times and with regard to all relevant actions of the Defendants as alleged in this Complaint, the Defendants were acting in their official capacities, under color of state law, and pursuant to the official policies, practices and customs of the governmental agencies or entities which the Defendants respectively represent.

## FACTUAL ALLEGATIONS

### The SOS Initiative

21.     The Nebraska Constitution permits initiatives whereby "constitutional amendments [may be] adopted by the people independently of the Legislature."  Neb. Con. Art. III, § 2.

22.     The initiative power "may be invoked by petition" which, in the case of a constitutional amendment, "shall be signed by ten percent" of registered voters in Nebraska.  *Id.*

23.     Where a petition is for an amendment to the Nebraska Constitution, the petition "shall be so distributed as to include five percent of the registered voters of each of two-fifths of the counties of the state."  *Id.*

24.     When the proper number of signatures are gathered, the petition is submitted to the Secretary of State for verification and inclusion on the ballot in the next general election.

25.     There are currently approximately 1,150,000 registered voters in the State of Nebraska.

26.    On April 18, 2006 Plaintiff Groene sponsored an initiative which seeks to place on the Nebraska ballot in November 2006, a constitutional amendment which will establish a limit on the growth of state spending which may only be exceeded with voter approval.

27.    Beginning on or around May 9, 2006, Plaintiff Groene began working with individuals to circulate the SOS Initiative and request that people sign a petition to put the SOS Initiative on the ballot.

28.    In order to place a constitutional amendment on the Nebraska ballot in November 2006, the SOS Initiative must collect and verify approximately 115,000 signatures.

29.    The SOS Initiative must collect and verify all signatures and turn them into the Nebraska Secretary of State no later than July 7, 2006.

**The Lincoln Defendants' Policies and Practices**

30.    From June 9, 2006 through June 11, 2006, the Lincoln Defendants closed to motor vehicle traffic the area from approximately O Street to M Street between 11th Street and 13th Street in downtown Lincoln for the Celebrate Lincoln festival.

31.    The Celebrate Lincoln festival is a free community event which celebrates Lincoln's cultural diversity.  The festival includes free concerts, street dances, merchant booths and food and beverage vendors.

32.    The Celebrate Lincoln festival is sponsored by The Updowntowners, a non-profit community organization.  The Celebrate Lincoln festival is open to the general public and admission to Celebrate Lincoln is free.

33.    Although Celebrate Lincoln occurs on the City streets and sidewalks of Lincoln, the festival rules prohibits "campaign materials, petitions, religious materials, brochures

7

and/or solicitations" at the festival.

34.     On Sunday, June 11, 2006, Plaintiff Spradley arrived at the corner of 12th and O Street in
        Lincoln in order to circulate the SOS Initiative petition on Lincoln city streets and
        sidewalks at the Celebrate Lincoln festival.

35.     Spradley was not permitted to enter the Celebrate Lincoln festival because she intended
        to gather signatures for the SOS Initiative petition.

36.     Spradley was informed that turnstiles had been set up at the entrance to the Celebrate
        Lincoln festival "specifically to keep petitioners out" of the Celebrate Lincoln festival.

37.     Approximately four City of Lincoln police officers were standing next to the turnstiles
        when Spradley was denied access to the Celebrate Lincoln festival.

38.     Spradley requested that the police officers allow her to enter since the festival was being
        held on the public streets.

39.     The police officers refused to permit Spradley to enter the Celebrate Lincoln festival.

40.     Spradley reasonably feared that she would be arrested and prosecuted if she attempted to
        enter the Celebrate Lincoln festival in violation of the instruction that she was not
        allowed to enter, so she left the area and was not able to circulate the SOS Initiative
        Petition at the festival.

41.     The exclusion of petition circulators from the public streets and sidewalks of Lincoln
        during the Celebrate Lincoln festival was pursuant to the official policies, practices and
        customs of the Lincoln Defendants.

8

**The Omaha Defendants' Policies and Practices**

42.     On or about June 6, 2005, Defendants Fahey and Warren enacted an official policy relating to petition circulators' access to public and private property.  The policy is set forth in the  news release attached hereto as Exhibit 2 (the "Restricted Access Policy").

43.     Specifically, the Restricted Access Policy provided that whenever a petition circulator sought access to "publicly-owned property that has a restricted use and is not an open public forum such as outside the City of Omaha libraries or business offices," for the purpose of gathering signatures for an initiative petition, the petitioner must seek permission to access the property prior to attempting to obtain signatures at the property. If permission to access the property is denied and the petition circulator attempts to gather signatures at the property, the petition circulator may be arrested for trespassing or "any other appropriate charge."

44.     Prior to the issuance of the Restricted Access Policy, Omaha's official policy and practice with regard to initiative petition circulators allowed badged petition circulators "open access" to circulate petitions in any location, without fear of arrest or threat of prosecution.

45.     The "open access" policy was in place for approximately one week.  The adoption of the Restricted Access Policy ended the "open access" policy in Omaha.

46.     Since the Restricted Access Policy was put in place, petitioners have been threatened with arrest by the Omaha Defendants in Omaha public parks, outside of an Omaha public library, outside of the Douglas County courthouse, and outside of the Department of Motor Vehicles and Douglas County Treasurer offices.

47.     Plaintiffs would like to engage in First Amendment activity in these areas, but have been

        forced to refrain from doing so out of a reasonable fear of being arrested and prosecuted

        for trespass and other offenses pursuant to the Restricted Access Policy.

48.     The Restricted Access Policy was adopted and made an official policy, practice and

        custom of the Omaha Defendants.

**Access to Public Parks–Omaha**

49.     The City of Omaha has more than 200 public parks, consisting of community parks,

        regional parks, and other facilities.

50.     The Heartland of America Park ("Heartland Park") is a public park facility owned by the

        City of Omaha.  It is located at 810 Douglas Street, in downtown Omaha.

51.     Heartland Park contains picnic areas, paths, restroom facilities, and open green spaces for

        public use.

52.     Heartland Park receives funding for maintenance, administration, and other costs from

        the City of Omaha.

53.     Heartland Park is the location of various events throughout the year, including the Taste

        of Omaha festival (the "Festival").  The Festival took place from June 9, 2006 through

        June 11, 2006.

54.     The Festival was a free, community wide event that was open to the general public.

55.     On Friday, June 9, 2006, petitioner Andrew S. Jacobs was circulating the SOS Initiative

        in Heartland Park during the Festival.

56.     Jacobs was positioned on a public sidewalk in Heartland Park, talking with individuals

        about the SOS Initiative.

57.     While standing on a public sidewalk in Heartland Park, an employee or agent of the City of Omaha, approached Jacobs and stated that Jacobs could not circulate the SOS Initiative in Heartland Park during the Festival and threatened Jacobs with arrest and prosecution if Jacobs continued circulating the SOS Initiative in the park during the Festival.

58.     Jacobs reasonably feared that he would be arrested and subject to prosecution if he continued circulating the SOS Initiative in that area during the remainder of the Festival, so Jacobs left the area.

59.     The exclusion of petition circulators from the Heartland of America park during the Taste of Omaha festival was pursuant to the official policies, practices and customs of the Omaha Defendants.

**Access to Public Areas Outside Public Libraries–Omaha**

60.     The City of Omaha has ten public library facilities, and the main library, the W. Dale Clark Library, is located at 215 South 15th Street (the "Main Library").

61.     The Main Library has two primary entrances–one on the west side and one on the east side of the building.

62.     Each of the east and west entrances are surrounded by sidewalks, and the west entrance has a long, wide foot bridge extending out to another sidewalk over the street and parking area below.

63.     The east entrance has stairs extending out the sidewalk.

64.     On June 13, 2006, Plaintiff Rogers arrived at the Main Library and positioned himself on the west foot bridge.

11

65.    Rogers began circulating the petition in favor of the SOS Initiative on the west foot bridge, and continued circulating the petition for approximately five minutes.

66.    After approximately five minutes of circulating the petition in favor of the SOS Initiative, two security officers from the Main Library approached Rogers and asked him to stop petitioning on the foot bridge.

67.    Rogers entered the Main Library and spoke to the Assistant Director of the Main Library.

68.    The Assistant Director informed Rogers that he could not petition on the foot bridge because the library did not "support [his] cause" and because the library was not public property.

69.    The Assistant Director informed Rogers that he would be arrested if he continued to circulate the SOS Initiative petition on the foot bridge.

70.    Under the reasonable fear of and threat of arrest and prosecution, Rogers was forced to leave the area.

71.    On or about June 20, 2006, petition circulator Mark Pickens arrived at the East entrance of the W. Dale Clark Main Library at 215 South 15th Street in order to circulate the SOS Initiative petition.

72.    Pickens positioned himself on the public sidewalk running parallel to 14th Street.

73.    A library security guard approached Pickens and stated that he could not circulate petitions in the area in which he was standing, which was the public sidewalk parallel to 14th Street.

74.    Under the reasonable fear of and threat of arrest and prosecution, Pickens was forced to leave the 14th Street public sidewalk area.

12

75.     The exclusion of petition circulators from the areas in and around the Library was pursuant to the official policies, practices and customs of the Omaha Defendants.

**Access to Douglas County Treasurer Offices/DMV Locations-Omaha**

76.     The Douglas County Treasurer has five locations in the Omaha metropolitan area: 411 North 84th Street, 4107 South 24th Street, 7414 North 30th Street, 5306 South 136th Street, and 2918 North 108th Street.

77.     These locations also serve as offices for the Department of Motor Vehicles.  The DMV offices and Douglas County Treasurer's offices are collectively referred to as County Treasurer Locations.

78.     The County Treasurer Locations are open to the public and offer services such as drivers license testing and license renewal.  In addition, Douglas County residents can pay their property taxes at these locations.

79.     Some of the County Treasurer Locations are located in shopping malls, others are stand-alone buildings with their own parking lots.

80.     On or about June 8, 2006, petition circulator Robert Atteberry positioned himself at the County Treasurer Location at 136th & Q Streets, street address 5306 South 136th Street, in Omaha in order to circulate the petition in support of the SOS Initiative.

81.     The County Treasurer Location at 136th and Q Streets is located in a strip mall along with a U.S. Post Office, Baker's Supermarket, and other retail outlets.

82.     Atteberry positioned himself on the public sidewalk near the entrance of the County Treasurer Location and was standing at least 20-25 feet from the door to the County Treasurer Location and approximately two feet from the curb of the parking lot.

83.   At no time did Atteberry block the entrance to the County Treasurer Location and at no time did Atteberry's activities cause any crowds to gather in the area.

84.   Soon after Atteberry began circulating the petition in support of the SOS Initiative, a property manager approached Atteberry and stated that he could not circulate petitions at the County Treasurer Location and that he had to leave the area.

85.   Atteberry stated to the property manager that he had a right to circulate the petition in support of the SOS Initiative at the County Treasurer Location and that he would not leave until he was asked to do so by a police officer.

86.   The property manager then called the police and an Omaha police officer arrived and asked Atteberry to leave the County Treasurer Location.  The property manager handed Atteberry a copy of the Restricted Access Policy.

87.   Atteberry reasonably feared that he would be arrested and prosecuted, so he immediately left the area.

88.   Similarly, on Friday, June 9, 2006, petition circulator Mark Pickens positioned himself at the County Treasurer Location at 84th and Dodge, street address 411 North 84th Street in Omaha,  in order to circulate the petition in support of the SOS Initiative.

89.   Pickens was positioned on the sidewalk outside of the County Treasurer Location.

90.   After approximately 30 minutes of circulating the petition in support of the SOS Initiative, a DMV or Douglas County Treasurer's office employee approached Pickens and stated that the County Treasurer Location was private property and that Pickens could not petition on the sidewalk in front of the County Treasurer Location.

91.   The employee informed Pickens that the City of Omaha Restricted Access Policy was posted on the door of the County Treasurer Location and that the notice stated that he could not petition at the County Treasurer Location.  Reasonably fearing arrest and prosecution, Pickens left the County Treasurer Location.

92.   Plaintiff Rogers positioned himself outside of the County Treasurer Location at 108th and Maple, street address 2918 North 108th Street, in Omaha on June 9, 2006.

93.   Rogers positioned himself on the sidewalk outside of the County Treasurer Location. Individuals can use the sidewalk as a means to get to other locations other than the DMV office.

94.   After approximately 30 minutes of circulating the petition in support of the SOS Initiative, a DMV or Douglas County Treasurer's office employee approached Rogers and stated that the County Treasurer Location was private property and that Rogers had to leave.

95.   The employee informed Rogers that he was calling the police and approximately 30-45 minutes later, the police arrived at the County Treasurer Location.

96.   Rogers observed the police talking to the employee.

97.   The Omaha police officer stated to Rogers that he could not circulate the petition in support of the SOS Initiative in front of the County Treasurer Location, but that he could move in front of another location in the same area as the County Treasurer Location.

98.   Rogers informed the police officer that he preferred to stay in front of the County Treasurer Location and that he did not want to move to another location.

99.   The police officer once again conferred with the employee outside of Rogers' presence.

15

100.    The police officer thereafter informed Rogers that he was permitted to circulate the petition in support of the SOS Initiative in the parking lot outside of the County Treasurer Location but not on the sidewalks in front of the County Treasurer Location.

101.    Rogers continued to circulate the petition in support of the SOS Initiative in the parking lot because he reasonably feared he would be arrested and prosecuted if he remained on the sidewalk.

102.    The employee told Rogers that the Mayor told him to keep petitioners away from the County Treasurer Location, and he then handed Rogers a copy of the Restricted Access Policy.

103.    The exclusion of petition circulators from the areas in and around the County Treasurer Locations was pursuant to the official policies, practices and customs of the Omaha Defendants.

**Access to Courthouse Area-Omaha**

104.    On or about June 20, 2006, petition circulator Andrew Jacobs positioned himself at the Douglas County Government Center which is made up of the Hall of Justice and the Omaha/Douglas County Civic Center and located at 17th & Farnam Streets in Omaha (the "Courthouse") in order to circulate the petition in support of the SOS Initiative.

105.    Jacobs positioned himself in the both the north mall and south mall courtyards near the entrances to the Courthouse. At all times, Jacobs was standing on the public sidewalks and at least 20-25 feet from the entrances.

106.    At no time did Jacobs block anyone's ability to enter or exit the Courthouse and at no time did Jacobs' activities cause any crowds to gather in these areas.

16

107.    Soon after positioning himself at each location (north and south mall), Jacobs was

        approached by a security guard who stated to Jacobs that he could only stand on the

        sidewalk next to the street.  The security guard further stated that Jacobs could not be on

        any of the other paved areas surrounding the exterior of the Courthouse.

108.    Jacobs reasonably feared that he would be arrested and prosecuted if he failed to comply,

        so he immediately left the area around the Courthouse area.

109.    The exclusion of petition circulators from the areas in and around the Courthouse was

        pursuant to the official policies, practices and customs of the Omaha Defendants.

**The Grand Island Defendants' Policies and Practices**

110.    On or about Tuesday, June 20, 2006, Rogers arrived at the Edith Abbott Memorial

        Library (the "Library") at 211 N. Washington in Grand Island, Nebraska in order to

        circulate the petition in support of the SOS Initiative.

111.    The area around the entrance of the Library is currently under construction.  There is a

        construction fence in place which goes around the front of the Library.

112.    Rogers positioned himself approximately 200-300 feet from the entrance to the Library

        on and around the public sidewalk on the exterior grounds of the Library which runs

        parallel to the street.

113.    At no time did Rogers block the entrance to the Library and always remained within 15

        feet of the public sidewalk.

114.    Rogers was successful in gathering signatures on and near the public sidewalk

        surrounding the Library, but at no time did any crowds gather in this area.

115.    After approximately one hour, Defendant Fosselman told Rogers that Rogers had to leave

the area around the Library because Fosselman was "not comfortable" petitioners near the Library, and that Fosselman had been told by the City Attorney that Rogers could not be near the Library because of citizens' requests.

116.    Rogers reasonably feared arrest and prosecution if he failed to comply with the order to leave, so he left the public sidewalk area around the Library and ceased petitioning in that area.

117.    Plaintiffs have a reasonable fear that engaging in the activities described above will result in a likelihood of arrests, prosecutions and convictions under the policies and practices of the Defendants.

118.    The exclusion of petition circulators from the areas in and around the Library was pursuant to the official policies, practices and customs of the Grand Island Defendants.

**General Allegations Common to All Claims**

119.    As a result of the Plaintiffs' reasonable fears of arrest, prosecution and conviction, the Plaintiffs have been and will continue to be unable to exercise their constitutional rights to circulate initiative petitions in public locations.

120.    Unless enforcement of the Defendants' unlawful policies and practices are enjoined, the Plaintiffs will suffer irreparable injury by being deprived of the ability to engage in constitutionally protected speech on matters of important public and political concern. Plaintiffs have no adequate remedy at law.

121.    Neither the Defendants, nor any other third party, will suffer any injury if injunctive relief is issued.

122.    The public interest favors the issuance of injunctive relief to protect the constitutional

18

rights at state in this case.

**CLAIM FOR RELIEF**
Violation of the United States Constitution
(42 U.S.C. § 1983)

123.   Paragraphs 1 through 122 are incorporated by reference as if set forth fully herein.

124.   The threats of arrests, prosecutions and convictions of the Plaintiffs by the Defendants for engaging in constitutionally protected forms of speech, violates the constitutional rights of the Plaintiffs in violation of 42 U.S.C. § 1983 et seq.

125.   The official policies, practices and customs of the Defendants as described in this Complaint, violate the Freedom of Speech Clause of the First Amendment to the United States Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**WHEREFORE,** Plaintiff respectfully requests that this Court:

1.   Enter judgment declaring that the policies and practices of the Defendants as described in this Complaint violate the First and Fourteenth Amendments to the United States Constitution, and may not lawfully be enforced in the future;

2.   Issue preliminary and permanent injunctions prohibiting the Defendants, their employees and agents, and all persons acting under their direction, from enforcing the above referenced policies and practices;

3.   Grant Plaintiffs their reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988 and other applicable laws; and

4.   Grant all such other relief as this Court deems just and proper.

19

Dated this 26th day of June, 2006.

MIKE GROENE, individually and as Chair of the Stop Overspending Nebraska Ballot Committee; ROBERT COLE ROGERS, and AMIE SPRADLEY, Plaintiffs

BY:   OGBORN, SUMMERLIN & OGBORN, P.C.
      GENE SUMMERLIN - 19611
      MARNIE A. JENSEN - 22380
      610 J Street, Suite 200
      Lincoln, NE  68508
      (402) 434-8040
      gene@osolaw.com
      marnie@osolaw.com

BY:       /s/ Gene Summerlin_____

and

      MAYER, BROWN, ROWE & MAW LLP
      EUGENE VOLOKH - (pro hac vice pending)
      [mailing address only]
      UCLA School of Law
      405 Hilgard Ave.
      Los Angeles, CA 90095
      (310) 206-3926
      volokh@law.ucla.edu

BY:       /s/ Eugene Volokh_____

20