IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEBRASKA

MIKE GROENE, et al.,                           )     Case No. 4:06CV3153
                                               )
Plaintiffs,                                    )
                                               )     BRIEF OF THE LEAGUE OF NEBRASKA
v.                                             )         MUNICIPALITIES
                                               )     IN OPPOSITION TO MOTION FOR
COLEEN SENG, et al.,                           )     TEMPORARY RESTRAINING ORDER
                                               )
Defendants,                                    )

## THE DISPUTES

Based on the Complaint and the telephone conference held on June 27th, it appears the disputes involve restrictions on persons soliciting petition signatures: (1) in some areas that are referred to as "sidewalks" and (2) at two events held in an Omaha park and on Lincoln streets.

The Complaint also contains references to restrictions on "private property." However, there are no specific allegations or evidence that petition circulators have been unlawfully restricted on private property.  As such, the question of whether trespass laws may be enforced against circulators at private businesses, such as Wal-Mart or Gas 'N Shop, is not in dispute.

## PUBLIC FORUM ANALYSIS

"[T]he First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983) (internal quotations omitted). "The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Id.* at 44. To this end, the Supreme Court uses a forum analysis for evaluating restrictions of speech on government property. *See id.* at 45-46. The forum analysis initially requires a court to determine whether a property is a traditional public forum, a designated public forum, or a nonpublic forum. *Families Achieving Independence & Respect v. Neb. Dep't of Soc. Servs.*, 111 F.3d 1408, 1418 (8th Cir. 1997). Once a court makes a determination on the nature of the

forum, it then applies the appropriate standard of scrutiny to decide whether a restriction on speech passes constitutional muster. *See, e.g., Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677-683 (1998) (hereinafter "*Forbes*"); *United States v. Kokinda*, 497 U.S. 720, 726-27 (1990). Thus, the extent to which access to, and the character of speech upon, government property may be limited depends upon the nature of the forum in which the speech takes place. *Burnham v. Ianni*, 119 F.3d 668, 675 (8th Cir. 1997).

*Bowman v. White*, 444 F.3d 967, 974-975 (8th Cir. 2006).

## THE SIDEWALK DISPUTES

During the June 27th conference call, the attorneys essentially voiced agreement with the position that the municipal defendants will not be restricting circulators on perimeter sidewalks. As such, quintessential public sidewalks are not in dispute. Rather, the dispute exists over: (1) entrance walkways to restricted-use public buildings and (2) walkways within private shopping malls within which public buildings are located.

1.  <u>What Sidewalks are Public Forums?</u>

In *United States v. Grace,* 461 U.S. 171 (1983) the Court held: "The public sidewalks forming the perimeter of the Supreme Court grounds, in our view, are public forums and should be treated as such for First Amendment purposes." The fact that the Court restricted its holding to the "perimeter sidewalks" is significant. Notably absent in the Court's holding was a reference to "the plaza and surrounding promenade, lawn area, and steps," which Congress had included in its definition of the courthouse "grounds."

Admittedly, the only issue in *Grace* was the perimeter sidewalk, as that is where the protestors sought to locate. In other cases, though, the Supreme Courts has directly ruled that certain sidewalks are not public forums. In particular, the Supreme Court has ruled that a post

office sidewalk is not public forum, *United States v. Kokinda*, 497 U.S. 720 (1990), and that a

military sidewalk is not a public forum. *Greer v. Spock,* 424 U.S. 828 (1976).

The guidance provided by the Court in *Kokinda*, where a plurality ruled that public

sidewalks outside post offices are not public forums, is helpful in distinguishing walkways that are

recognized as public fora, and those that are not:

> The mere physical characteristics of the property cannot dictate forum analysis. If
> they did, then *Greer v. Spock*, 424 U.S. 828 (1976), would have been decided
> differently. In that case, we held that even though a military base permitted free
> civilian access to certain unrestricted areas, the base was a nonpublic forum. The
> presence of sidewalks and streets within the base did not require a finding that it was
> a public forum. *Id.*, at 835-837.
>
> The postal sidewalk at issue does not have the characteristics of public sidewalks
> traditionally open to expressive activity. The municipal sidewalk that runs parallel to
> the road in this case is a public passageway. The Postal Service's sidewalk is not
> such a thoroughfare. Rather, it leads only from the parking area to the front door of
> the post office. Unlike the public street described in *Heffron v. International Society
> for Krishna Consciousness, Inc.*, 452 U.S. 640 (1981), which was "continually open,
> often uncongested, and constituted not only a necessary conduit in the daily affairs
> of a locality's citizens, but also a place where people [could] enjoy the open air or
> the company of friends and neighbors in a relaxed environment," *id.*, at 651, the
> postal sidewalk was constructed solely to provide for the passage of individuals
> engaged in postal business. The sidewalk leading to the entry of the post office is
> not the traditional public forum sidewalk referred to in *Perry*.
>
> Nor is the right of access under consideration in this case the quintessential public
> sidewalk which we addressed in *Frisby v. Schultz*, 487 U.S. 474 (1988) (residential
> sidewalk). The postal sidewalk was constructed solely to assist postal patrons to
> negotiate the space between the parking lot and the front door of the post office, not
> to facilitate the daily commerce and life of the neighborhood or city. The dissent
> would designate all sidewalks open to the public as public fora. *See* post, 497 U.S.
> at 745 ("That the walkway at issue is a sidewalk open and accessible to the general
> public is alone sufficient to identify it as a public forum"). That, however, is not our
> settled doctrine. . . .
>
> *Grace* instructs that the dissent is simply incorrect in asserting that every public
> sidewalk is a public forum. Post, 497 U.S. at 745. As we recognized in *Grace*, **the
> location and purpose of a publicly owned sidewalk is critical to determining
> whether such a sidewalk constitutes a public forum.**

. . .

> . . . Postal entryways, like the walkways at issue in *Greer*, may be open to the public, but that fact alone does not establish that such areas must be treated as traditional public fora under the First Amendment.
>
>  Thus, the regulation at issue must be analyzed under the standards set forth for nonpublic fora: It must be reasonable and "not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry, supra*, at 46. Indeed, "control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius, supra*, at 806. "The Government's decision to restrict access to a nonpublic forum need only be reasonable; it need not be the most reasonable or the only reasonable limitation." 473 U.S. at 808.

*United States v. Kokinda*, 497 U.S. 720, 727-730 (1990) (emphasis added).

Relying on these principals, other courts have similarly recognized that certain sidewalks are not public fora. *See Chad v. City of Fort Lauderdale, Florida*, 861 F. Supp. 1057(S.D. Fla. 1994) ("the court concludes that plaintiffs have not established that either the sidewalk east of Highway A1A or Ft. Lauderdale's beach constitute a forum for public communication by tradition or designation. The sidewalk is new and small; it does not even extend the full length of the beach. It was created to accommodate traffic to and from the beach and . . . has not been a traditional site for expressive conduct"); *Monterey County Democratic Central Committee v. United States Postal Service*, 812 F.2d 1194 (9th Cir. 1987) ("The isolated nature of the building and the surrounding walkway indicate to all who approach that the walkway services postal patrons entering the building and that it is not a thoroughfare for passersby intent on other errands. This fact is sufficient to overcome the presumption of public forum status otherwise accorded sidewalks"); *U.S. v. Bjerke*, 796 F.2d 643 (3rd Cir. 1986) ("[W]here the walkway is clearly within the perimeters of government property -- as opposed to the situation in *Grace* -- the government may choose to restrict the use of the walkway and limit public expression at that location. . . . Accordingly, we

must analyze the Postal Service's ban on solicitation outside McKnight and Monroeville in accord with the appropriate constitutional standards for nonpublic forums").

2. Entrance Sidewalks are Not Public Forums.

Sidewalks that serve as entry walkways to restricted-use public buildings, such as the libraries in Grand Island and Omaha, are not public fora. Like the sidewalks addressed in *Kokinda*, the location and purpose of these entry walkways make it apparent that they are provided for the passage of individuals to the entry of the library, "not to facilitate the daily commerce and life of the neighborhood or city" or to "engage in expressive activity." Since these walkways are within the perimeters of government property, the government may choose to restrict the use of the walkways and limit public expression at these locations.

Allowing petition circulators to freely use the perimeter sidewalks, but not the entry walkways, "has not been shown to deny access within the forum in question. [I]t does not exclude [the petition circulators] from the [area surrounding the public buildings] nor does it deny that organization the right to conduct any desired activity at some point within the forum." *Heffron v. Int'l Soc. for Krishna Consciousness*, 452 U.S. 640, 655 (1981) (upholding rule that restricted expressive activities at the state fair grounds to designated booths).

3. Shopping Center Sidewalks are Not Public Forums.

The Douglas County Treasurer's Offices and DMV facilities are located within private shopping malls. The question is whether the sidewalks within the shopping malls are "public fora."

Over 30 years ago, the Supreme Court held that a privately owned shopping center may prohibit the distribution of handbills on its property when the handbilling is unrelated to the

shopping center's operations. *Lloyd Corp*. v. *Tanner*, 407 U.S. 551 (1972). Since the plaintiffs in the case at bar rely only on the First Amendment Clause, the decision in *Lloyd* controls with regard to sidewalks in the shopping malls at which the Treasurer's Office and DMV facilities are located.

## THE EVENTS DISPUTES

The dispute centers on the Plaintiffs' claims that they were excluded from two festivals—one in Lincoln and one in Omaha. Case law makes it clear that a government entity has the right to issue permits granting groups the exclusive use of public property for a limited time period, such as community festivals like those held in Lincoln and Omaha. As the court in *Sistrunk v. City of Strongsville*, 99 F.3d 194, 198 (6th Cir. 1996) recognized:

> The law cited by plaintiff may prohibit the City of Strongsville from denying any access to the Commons for expressive activity and from granting or denying permits based on the content of an applicant's speech, but it does not prohibit the city from issuing permits to groups seeking to make exclusive use of the Commons for expressive activity during a limited period of time. In fact, a recent Supreme Court case suggests that the city may not constitutionally require a permittee organization to include discordant speakers in its expressive activity.

According to *Sistrunk*, not only were Lincoln and Omaha within their rights to prohibit outside solicitors and petition gatherers, they were <u>obligated</u> to keep such individuals outside the festivals.

Similarly, in *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640 (1981), the United States Supreme Court upheld the Minnesota State Fair's right to prohibit individuals or groups from distributing literature or soliciting patrons of the fair by traveling throughout the publicly-owned fairgrounds. The fair's requirement that such distribution and solicitation be conducted from a fixed location was held to be a valid time, place, and manner restriction. The Court recognized the government's significant interest in orderly movement and control of the

large crowds at an event like the state fair to ensure the public's safety and convenience. While

the religious group in *Heffron* tried to analogize the fairgrounds to city streets, the Court rejected

this analogy, making the following observations:

> But it is clear that there are significant differences between a street and the fairgrounds. A street is continually open, often uncongested, and constitutes not only a necessary conduit in the daily affairs of a locality's citizens, but also a place where people may enjoy the open air or the company of friends and neighbors in a relaxed environment. The Minnesota Fair, as described above, is a temporary event attracting great numbers of visitors who come to the event for a short period to see and experience the host of exhibits and attractions at the Fair. The flow of the crowd and demands of safety are more pressing in the context of the Fair. As such, any comparisons to public streets are necessarily inexact.

*Id.* at 651.

Like the Minnesota State Fair, the Lincoln and Omaha festivals referred to in Plaintiffs'

Complaint were temporary events attracting a large crowd of visitors in a contained space. In

order to ensure the safety of visitors to those events, it is necessary to prohibit or place limits on

who can roam freely throughout the festival. The actions of the cities of Lincoln and Omaha as

alleged in the Complaint are no more onerous to First Amendment rights than those permitted in

*Heffron*.

In upholding the government's ability to restrict the place and manner of solicitations in

*Heffron*, the Court noted, among other things, that the religious group was not prevented from

soliciting outside the fairgrounds. *Id.* at 654-55. Like the plaintiffs in *Heffron*, the Plaintiffs in

this case were permitted to gather signatures outside of the areas where the festivals were taking

place. Therefore, their First Amendment rights were not infringed upon.

# THE ULTIMATE QUESTION

The ultimate question is whether a TRO should be entered against the defendants. The purpose of a TRO can not, as the plaintiffs' counsel implied during the June 27th telephone conference, be to simply send the defendants and other municipalities a message as to what the law is. Rather, a TRO can only be entered if the plaintiffs meet their burden of proving the *Dataphase* test.

Preliminary to and a part of that test is proof that the plaintiffs have standing to obtain injunctive relief and that a justiciable controversy exists, for:

> Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 540, 89 L. Ed. 2d 501, 106 S. Ct. 1326 (1986). The limitations imposed by Article III are usually referred to as the "case or controversy" requirement. *Arkansas AFL-CIO v. FCC*, 11 F.3d 1430, 1435 (8th Cir. 1993) (en banc). This court has defined a "case or controversy" to require "a definite and concrete controversy involving adverse legal interests at every stage in the litigation." *McFarlin v. Newport Special Sch. Dist.*, 980 F.2d 1208, 1210 (8th Cir. 1992) (McFarlin). Federal courts must always satisfy themselves that this requirement has been met before reaching the merits of a case. Courts employ a number of doctrines to determine justiciability such as standing, ripeness, and mootness.

*Schanou v. Lancaster County Sch. Dist. No. 160*, 62 F.3d 1040, 1042 (8th Cir. 1995). The concerns with justiciability is present in the case at bar. In particular, their challenges based on events that may not be replicated between now and July 7 do not present a controversy that is appropriate for entry of a TRO. The ruling of the court in *Elend v. Sun Dome, Inc.*, 370 F. Supp. 2d 1206, 1212 (D. Fla. 2005), applies to the disputes in the case at bar. The plaintiffs in *Elend* had been arrested for trespassing during a political event held at the University of South Florida's Sun Dome. The plaintiffs then sought injunction relief against the Secret Service to prevent their being arrested at future such events. The court denied the requested the plaintiffs the requested relief, stating:

In sum, there are two reasons why the plaintiffs' claim against the Secret Service is not justiciable. First, the plaintiffs do not have standing to assert their claim for prospective relief because they have not alleged that they are facing a real and immediate threat of future injury. Second, the plaintiffs' claim is not ripe since it is not fit for judicial decision and the plaintiffs will not suffer any significant hardship if judicial consideration is withheld.

## CONCLUSION

The League of Nebraska Municipalities respectfully submits that the Plaintiffs' Motion for a Temporary Restraining Order should be denied.

LEAGUE OF NEBRASKA MUNICIPALITIES, Amicus

BY:   PERRY, GUTHERY, HAASE & GESSFORD, P.C., L.L.O.,

BY:   */s/ Jeanette Stull  /s/ Gregory H. Perry*
James B. Gessford, #15058
Gregory H. Perry, #17775
Jeanette Stull, #21257
233 South 13th, Suite 1400
Lincoln, Nebraska 68508
(402) 476-9200

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 28th day of June, 2006, she electronically filed the above Brief of the League of Nebraska Municipalities with the Clerk of the United States District Court using the CM/ECF system who sent electronic notice of the filing to the following ECF participant(s): Marnie A. Jensen, V. Gene Summerlin, Jr., Bernard J. Monbouquette, Richard Anderson. Delivery will be made to Tom Mumgaard and Dale Shotkoski by facsimile transmission.

*/s/ Jeanette Stull*