# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MIKE GROENE, individually and as Chair of the Stop Overspending Nebraska Ballot Committee; ROBERT COLE ROGERS, and AMIE SPRADLEY, | )<br>)<br>)<br>)<br>) | |
| Plaintiffs, | ) | 4:06CV3153 |
| | ) | |
| v. | ) | |
| | ) | |
| COLEEN SENG, in her official capacity as Mayor of the City of Lincoln, Nebraska; THOMAS K. CASADY, in his official capacity as Chief of Police for the City of Lincoln, Nebraska; MIKE FAHEY, in his official capacity as Mayor of the City of Omaha, Nebraska; THOMAS H. WARREN, in his official capacity as Chief of Police for the City of Omaha, Nebraska; JULY M. HANEY, in her official capacity as Treasurer, Douglas County, Nebraska; RIVKAH SASS, in her official capacity as Library Director for the City of Omaha, Nebraska; STACEY ALDRICH, in her official capacity as Assistant Library Director for the City of Omaha, Nebraska; JAY VAVRICEK, in his official capacity as Mayor of the City of Grand Island, Nebraska; STEVE LAMKEN, in his official capacity as Chief of Police for the City of Grand Island, Nebraska; STEVE FOSSELMAN, as Library Director for the City of Grand Island, Nebraska; RONALD W. ROSKENS, in his official capacity as Chairman of the Omaha-Douglas Public Building Commission, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **MEMORANDUM<br>AND ORDER** |
| | ) | |
| Defendants. | ) | |

This matter comes on for consideration of Plaintiffs' request for a temporary restraining order pursuant to Fed. R. Civ. P. 65. (Filing 4.) Plaintiffs are petition circulators working for a group which seeks to place a constitutional amendment on the Nebraska November 2006 ballot.[1] The amendment would establish a limit on the growth of state spending. In this 42 U.S.C. § 1983 action, the plaintiffs allege they have been denied access to public areas and have been threatened with arrest pursuant to the "policies and practices" of the cities of Omaha, Lincoln, and Grand Island, Nebraska.

One of these policies, issued by the Omaha Police Department, requires "petitioners that are attempting to obtain signatures" to get permission from "management" before attempting to obtain signatures and to leave if permission is not granted. If the request to leave is disobeyed in the presence of the Omaha police, the petitioner "can be arrested for Trespassing or any other appropriate charge." The policy states that this procedure will be followed at private shopping areas and also "when the petitioner is on publicly-owned property that has a restricted use and is not an open public forum such as outside the City of Omaha libraries or business offices." (Filing 1, Complaint, Ex. 2.)

Another of these policies is a rule regarding the "Celebrate Lincoln" festival which prohibited "campaign materials, petitions, religious materials, brochures and/or solicitations" at the festival. The festival was held on City of Lincoln streets and sidewalks from June 9, 2006, through June 11, 2006. Pursuant to this policy, one of the plaintiff petition circulators was denied access to the festival.

The allegedly unconstitutional Grand Island "policy" caused one of the plaintiff petition circulators to be directed to leave the public sidewalk on the exterior grounds

---

[1]The plaintiffs allege that they must collect and verify approximately 115,000 signatures and submit them to the Nebraska Secretary of State by July 7, 2006.

of the Edith Abbott Memorial Library when the plaintiff was positioned 200-300 feet from the library entrance.

The "policies and practices" complained of shall be referred to as "the policy" in the text of this memorandum and order.

## I.  PRELIMINARY INJUNCTIVE RELIEF[2]

The factors to be weighed in deciding whether to grant or deny preliminary injunctive relief are:

> (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 114 (8th Cir. 1981). "No single factor in itself is dispositive; rather, each factor must be considered to determine whether the balance of equities weighs toward granting the injunction." United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1179 (8th Cir. 1998).

> At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined. . . .
>
>         . . . .

---

[2] I apply the factors to be weighed in deciding whether to grant a preliminary injunction to the plaintiffs' request for a temporary restraining order. Gahan ex rel. Gahan v. United States Amateur Confederation of Roller Skating, 382 F. Supp. 2d 1127, 1129 (D. Neb. 2005).

> [W]here the balance of other factors tips decidedly toward movant a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation.

Dataphase, 640 F.2d at 113.

## A.  Probability of Success on the Merits

It appears that most of the petition-circulating activity being regulated here occurred in public streets, sidewalks, grounds, parks, malls, and access ways to these areas.  "'[P]ublic places' historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be 'public forums.'" United States v. Grace, 461 U.S. 171, 177 (1983).  "'[T]ime out of mind' public streets and sidewalks have been used for public assembly and debate, the hallmarks of a traditional public forum."  Frisby v. Schultz, 487 U.S. 474, 480 (1988) (quoting Perry Educ. Ass'n v.  Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983)).  The government's ability to restrict expressive activities in these public places is very limited.

> In these quintessential public forums, the government may not prohibit all communicative activity.  For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.  The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.

Perry, 460 U.S. at 45 (citations omitted).  See Bowman v. White, 444 F.3d 967, 975 (8th Cir. 2006) (explaining tests for traditional public, designated public, and nonpublic fora; determining type of forum requires considering physical characteristics and location of the property, traditional and objective uses of the

property, purposes of the space, government intent and policy with respect to the property, and special characteristics).

At this very early stage of the litigation, it appears that the policy at issue is a content-neutral restriction on expressive activity in traditional public fora which must be narrowly tailored to serve a significant state interest. While Omaha, Grand Island, and Lincoln have a significant state interest in maintaining clear access to its public buildings and events, controlling pedestrian traffic on sidewalks, and preventing disturbances, it is not necessary to remove all petition circulators from public areas to achieve those interests. These cities could enact legitimate time, place, and manner restrictions which limit the number of circulators in a given area or require that circulators remain a certain distance from public facilities, but a total ban on all petition circulators in public areas cannot be considered "narrowly tailored." See Olmer v. City of Lincoln, 192 F.3d 1176, 1181 (8th Cir. 1999) ("'The defendants . . . have a right to engage in peaceful pamphleteering and picketing on public property, so long as they do not 'unduly interfere with the normal use of the public property by other members of the public with an equal right of access to it.'") (quoting Action v. Gannon, 450 F.2d 1227, 1232-33 (8th Cir. 1971)).

To the extent the policy at issue regulates expressive activity on what might be characterized as "designated public fora"—such as sidewalks outside of the Douglas County Treasurer's Office and the Department of Motor Vehicles, some of which are located in strip malls—it also violates the First Amendment. As discussed above, the policy cannot be considered a content-neutral time, place, and manner restriction because it is not narrowly drawn to achieve a significant government interest. Bowman, 444 F.3d at 976 (test for unlimited[3] designated public forum). Nor is the

---

[3]"In an unlimited designated public forum, the government may enforce a content-neutral time, place, and manner restriction only if the restriction is necessary to serve a significant government interest and is narrowly drawn to achieve that interest." Bowman, 444 F.3d at 976.

policy reasonable, id. (test for limited[4] designated public forum), as illustrated by an argument made in Plaintiffs' brief:

> Here, petition circulators wish to engage in core political speech seeking a constitutional amendment to cap governmental spending. Though Nebraska residents are otherwise free to come by a county treasurer's office to voice concerns about property tax increases, a Nebraska resident seeking to enact legislative change to the government's spending structure is denied access to the very same office. Similarly, one would presume that if a group of citizens engaged a lobbyist to convince the county treasurer to lower the tax levy, the lobbyist would be free to address this issue with the treasurer or the treasurer's agents at the county treasurer's office. Again, though, if citizens sought to change the tax levy through the initiative process, those citizens would be denied access to the very same property despite the similar purpose of their requested access.

(Filing 5, Br. Supp. Mot. TRO at 33.) See, e.g., Jacobsen v. Howard, 109 F.3d 1268, 1274 (8th Cir. 1997) (holding that statute banning distribution of newspapers at interstate rest areas was unconstitutional, noting that such distribution was "fully compatible with the state's interests in providing safety, rest, and information to interstate travelers" and "the state may not legislate such a broad ban on First Amendment activity").

Thus, the plaintiffs are likely to succeed on the merits of their claim.

---

[4] "[I]n a limited designated public forum, restrictions on speech not within the type of expression allowed in a limited public forum must only be reasonable and viewpoint neutral." Bowman, 444 F.3d at 976 (internal quotation marks and citation omitted).

## B.  Irreparable Harm to the Plaintiffs

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality). See also Marcus v. Iowa Public Television, 97 F.3d 1137, 1140 (8th Cir. 1996) (citing Elrod and stating that if congressional candidates who moved for injunctive relief were denied their First Amendment rights when they were excluded from appearance on public television with other political candidates, they have suffered an irreparable injury under Dataphase); Kirkeby v. Furness, 52 F.3d 772, 775 (8th Cir. 1995) (district court should have granted demonstrators' motion to enjoin enforcement of city ordinance restricting residential picketing; citing Elrod and stating that since demonstrators' right to speak had probably been violated, they would suffer irreparable injury under Dataphase if injunction did not issue).

Because I have concluded that the policy at issue is not narrowly tailored to serve an important government interest, enforcement of the policy against the plaintiffs would deny them their First Amendment rights. Therefore, if a temporary restraining order barring enforcement of the policy did not issue, the plaintiffs would suffer irreparable harm under Dataphase.

## C.  Harm to the Defendants

If the court issues a temporary restraining order barring enforcement of the policy, the defendants simply lose an opportunity to arrest violators for "[t]respassing or any other appropriate charge" while the court decides whether the plaintiffs are entitled to a permanent injunction. When balanced against the risk that Plaintiffs will be denied their First Amendment rights if a temporary restraining order does not issue, this potential harm to Defendants is minimal.

**D.  Public Interest**

The court finds that the public interest in avoiding violation of the plaintiffs' First Amendment rights while the court considers the plaintiffs' request for a permanent injunction, and the public interest in encouraging government policies to be written and applied in a constitutionally acceptable manner, outweigh the arguably significant public interest in enabling patrons of government facilities to access those facilities without encountering petition circulators.

## II.  CONCLUSION

After analyzing the factors for granting preliminary injunctive relief set out in Dataphase, I conclude that "the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Dataphase, 640 F.2d at 113.  Therefore, a temporary restraining order should issue, barring enforcement of the policy because it is not narrowly tailored to serve a significant government interest and is not reasonable, in violation of the First Amendment.  The plaintiffs are reasonably likely to succeed on the merits of their claim.  Further, when balanced against the risk that Plaintiffs will be denied their First Amendment rights if a temporary restraining order does not issue, the potential harm to Defendants is minimal if the temporary restraining order is granted.  Finally, the public interest in avoiding violation of the plaintiffs' First Amendment rights while the court considers the plaintiffs' request for a permanent injunction weighs in favor of issuing a temporary restraining order.

IT IS ORDERED:

1.     Plaintiffs' request for a temporary restraining order (filing 4) is granted as provided herein and is otherwise denied.

2. Defendants, and each of them, including their agents, servants, and employees, are restrained from prohibiting the plaintiffs from circulating petitions on streets, sidewalks, exterior courtyards, parks, and walkways that carry public pedestrian traffic, but excluding steps into buildings or vestibules connected to such buildings.

3. For the sake of clarity, but without limitation, this restraining order applies to (a) streets, sidewalks, and walkways adjacent to government buildings or offices located in strip malls and (b) streets, sidewalks, and walkways where temporary festivals are being conducted.

4. The court determines under Fed. R. Civ. P. 65 that a bond in the amount of $500 is sufficient and directs Plaintiffs to post such a bond.

June 29, 2006. BY THE COURT:

s/ *Richard G. Kopf*
United States District Judge